IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

REVATHA V. PERERA,                    §
                                      §
            Plaintiff,                §
                                      §
v.                                    §        CIVIL ACTION NO. H-16-1131
                                      §
CAROLYN W. COLVIN,[1]                 §
ACTING COMMISSIONER OF THE            §
SOCIAL SECURITY ADMINISTRATION,       §
                                      §
            Defendant.                §

## MEMORANDUM OPINION AND ORDER

Pending before the court are Plaintiff, Revatha V. Perera's, Motion for Summary Judgment (Docket Entry No. 10) and Defendant, Carolyn W. Colvin's, Cross-Motion for Summary Judgment (Docket Entry No. 12). The court has considered the motions, Defendant's response to Plaintiff's motion, the administrative record, and the applicable law. For the reasons set forth below, Plaintiff's motion will be denied and Defendant's motion will be granted.

## I. Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405 (g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding Plaintiff's claims for disability insurance benefits under Title II of the Social Security Act.

---

[1]On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration.

## A. Medical History

Plaintiff was sixty years old on October 1, 2013, the alleged disability onset date.[2] Plaintiff worked as an employee benefits specialist from January of 1981 to January of 2003 and as a trust operations specialist from January of 2004 to October of 2013.[3]

Srinivas Panja, MD, MRCP, who was noted as Plaintiff's primary physician,[4] examined and treated Plaintiff on five different occasions between 2012 and 2015.[5] On January 5, 2012, Plaintiff admitted to drinking a fair amount of alcohol on a daily basis, and Dr. Panja's records noted type 2 diabetes mellitus, anxiety/depression, hypertension, and hyperlipidemia as ongoing medical problems.[6] During that examination Dr. Panja noted that there was no objective evidence of anxiety or depression and diagnosed Plaintiff with type 2 diabetes, mixed hyperlipidemia, and tobacco use disorder.[7] On May 17, 2013, Dr. Panja noted that Plaintiff continued to drink a fair amount of alcohol and again noted no evidence of anxiety or depression.[8] Plaintiff was diagnosed with benign essential hypertension, mixed hyperlipidemia, and type 2 diabetes mellitus.[9] On November 1, 2013, Dr. Panja examined Plaintiff and noted that there was no evidence of anxiety or depression and that Plaintiff had been able to stop drinking alcohol.[10]

---

[2] See Doc. 7, Transcript of Administrative Proceedings ("Tr.") 171.

[3] See Tr. 173.

[4] See Tr. 237; 240.

[5] See Tr. 348-58.

[6] See Tr. 352.

[7] See Tr. 353.

[8] See Tr. 350-51.

[9] See Tr. 351.

[10] See Tr. 357-58.

On January 23, 2014, Plaintiff was examined by Ray M. Fitzgerald, MD, for lumps in his hands.[11] Dr. Fitzgerald recorded that Plaintiff had full range of motion in both hands.[12] X-rays of the hands showed no abnormality, and the examination reflected palmar Dupuytren's nodules on both hands with no evidence of contractures.[13] Dr. Fitzgerald's impression of Plaintiff's condition was bilateral Dupuytren's nodules.[14] Concerning Plaintiff's mental state, Dr. Fitzgerald noted that Plaintiff was taking 12.5 mg of Paxil CR and denied anxiety and depression.[15] Dr. Fitzgerald referred Plaintiff to Dr. Rosen for further examination of his hands.[16]

On March 3, 2014, Alan Rosen, MD, examined Plaintiff's hands and noted that Plaintiff's hands were neurovascularly intact.[17] Dr. Rosen recorded bilateral palmar fascia thickening located at the base of the ring and small finger of the right hand, but he found no contractures and a full range of motion.[18] Dr. Rosen's impressions were osteoarthrosis in the bilateral hands and bilateral Dupuytren's nodules.[19] Treatment options were discussed with Plaintiff, including nonsteroidal anti-inflammatory drugs and therapy; however, Plaintiff declined anti-inflammatory drugs.[20]

---

[11]See Tr. 237.

[12]See Tr. 238.

[13]See id.

[14]See id.

[15]See Tr. 237-38.

[16]See Tr. 239.

[17]See Tr. 241.

[18]See Tr. 242.

[19]See id.

[20]See id.

On August 22, 2014, Dr. Panja found that Plaintiff's extremities were absent of deformities, edema, erythema, or tremors.[21] Dr. Panja also recorded that there was no evidence of neuropathy.[22] Additionally, although Plaintiff complained of feeling a bit depressed, Dr. Panja found no objective evidence of anxiety or depression.[23] However, the doctor prescribed Plaintiff 25 mg of Paxil CR to be taken daily.[24]

Plaintiff was examined by Barbara Hall, Ph.D., on October 9, 2014, for his alleged anxiety and depression.[25] Dr. Hall noted that Plaintiff's behavior was cooperative and that his speech was spontaneous.[26] Dr. Hall found that while Plaintiff's mood was depressed and his thoughts were centered on mental limitations, his thinking was coherent and his judgment and insight appeared to be intact.[27] Plaintiff's intelligence appeared to be in the above-average range, and his concentration was sufficient to complete serial 3's to 70.[28] Concerning his memory, Dr. Hall noted that Plaintiff could remember 1 of 3 objects after 5 minutes and 4 numbers forward and 3 numbers backwards.[29] Dr. Hall diagnosed Plaintiff with depressive disorder and found that Plaintiff's prognosis might improve with psychiatric treatment and psychotherapy.[30]

---

[21]See Tr. 355.

[22]See Tr. 356.

[23]See Tr. 355-56.

[24]See Tr. 356.

[25]See Tr. 246.

[26]See Tr. 247.

[27]See Tr. 248.

[28]See id.

[29]See id.

[30]See Tr. 249.

On December 12, 2014, Dr. Prashanth Palwai examined Plaintiff after continued pain in his hands and wrists.[31] Dr. Palwai noted swelling in the metacarpophalangeal (MCP) and proximal interphalangeal (PIP) joints as well as moderate to severe synovitis.[32] Plaintiff was diagnosed with unspecified inflammatory polyarthropathy and was prescribed leflunomide and prednisone.[33]

On January 12, 2015, Dr. Rosen examined Plaintiff's left hand after Plaintiff reported that he fell and landed on glass that pierced the base of his hand near the radial aspect of the median nerve.[34] After the injury, Plaintiff complained of hypersensitivity on the ulnar side of his left index finger and the radial side of his left middle finger. Plaintiff also reported that he was dropping things before the injury occurred.[35] The physical exam showed that Plaintiff was in no acute distress and his pulses were normal in all four extremities; however, Dr. Rosen noted a scar on Plaintiff's left hand palm and a decreased sensation in that hand.[36] Dr. Rosen examined Plaintiff's left wrist and found mild tenderness and swelling as well as hypersensitivity between the index and middle fingers.[37] Dr. Rosen noted that Plaintiff's left wrist was within a normal range of motion and x-rays were negative for any acute fractures, dislocations, or bony abnormalities.[38] The diagnoses were left

---

[31]See Tr. 275.

[32]See id.

[33]See id.

[34]See Tr. 258.

[35]See id.

[36]See Tr. 259-60.

[37]See Tr. 260.

[38]See Tr. 260-61.

median nerve injury and peripheral nerve laceration/injury; common digital left; left carpal tunnel syndrome; left cubital tunnel syndrome.[39]

On January 14, 2015, Plaintiff was again examined by Dr. Palwai.[40] Plaintiff's extremities were well perfused with no deformities, edema, or erythema.[41] Upon examination of the hands, Dr. Palwai noted active synovitis in 2, 3 MCP and all PIP joints on the right hand.[42] Additionally, lab results from January 7, 2015, indicated that Plaintiff's sedimentation rate was 2.[43] Dr. Palwai's diagnosis was unspecified inflammatory polyarthropathy.[44]

On April 16, 2015, Dr. Palwai examined Plaintiff for pain located in his hands and wrists.[45] Plaintiff's extremities were absent of deformities, edema, or erythema and were well perfused.[46] Dr. Palwai noted that Plaintiff had a small scar with tenderness on his left thenar eminence.[47] Plaintiff had some synovitis over left 3, 2 PIP joints, but they did not have much tenderness.[48] Dr. Palwai's assessment showed that Plaintiff's symptoms were consistent with seronegative arthritis and diagnosed Plaintiff with unspecified inflammatory polyarthropathy.[49]

---

[39]See Tr. 261-62.

[40]See Tr. 273.

[41]See id.

[42]See id.

[43]See Tr. 302.

[44]See Tr. 273.

[45]See Tr. 288.

[46]See Tr. 289.

[47]See id.

[48]See id.

[49]See id.

On June 26, 2015, Dr. Panja recorded Plaintiff's complaints of feeling anxious and a bit depressed.[50] Plaintiff's muscle tone and range of movements were normal, and his extremities showed no deformities, edema, erythema, or tremors.[51] Plaintiff's deep tendon reflexes and sensation were normal, and Dr. Panja found no evidence of neuropathy.[52] Additionally, Plaintiff did not find objective evidence of anxiety or depression.[53] Dr. Panja diagnosed Plaintiff with an unspecified anxiety state and prescribed Lexapro.[54]

Lastly, on July 21, 2015, Dr. Palwai examined Plaintiff and noted his complaints of severe pain in his right hand and right knee.[55] Plaintiff also complained that his left hand hurt.[56] It was noted that Plaintiff was a recovering alcoholic and denied consuming alcohol.[57] Plaintiff noted that a Medrol pack previously helped with 80% of symptoms.[58] Plaintiff's left thenar eminence had a small scar with tenderness, and Dr. Palwai noted that there was no synovitis over his right 3, 2 PIP joints.[59] Plaintiff's left thenar eminence was not tender.[60] Plaintiff's right knee was tender over the

---

[50]See Tr. 348.

[51]See id.

[52]See id.

[53]See Tr. 349.

[54]See id.

[55]See Tr. 284.

[56]See id.

[57]See id.

[58]See id.

[59]See Tr. 285.

[60]See id.

medial margin, but there was no sign of fluid.[61] Dr. Palwai again found that Plaintiff's symptoms were consistent with seronegative rheumatoid arthritis and diagnosed him with unspecified inflammatory polyarthropathy.[62]

## B.  Application to Social Security Administration

Plaintiff applied for Social Security benefits on July 18, 2014,[63] claiming an inability to work since October 1, 2013.[64] On July 24, 2014, Plaintiff claimed on his Disability Report that diabetes, arthritis, COPD/asthma, high blood pressure, anxiety, right shoulder, and depression limited his ability to work.[65]

On August 11, 2014, Plaintiff completed a Work History Report.[66] Plaintiff stated that he first worked as an institutional trust benefit specialist from September of 1981 to May of 2003, and as a trust operations specialist from September of 2004 to October of 2013.[67] As an institutional trust benefit specialist, Plaintiff said that he "disbursed monthly pension payments, posted co[mpany] contributions, set up 1099-R info[rmation] for 401K distributions, monitored daily cash [and] overdraft reports, processed client directives, processed transfers, [and] mutual funds for regional office."[68] He also indicated that he wrote, typed, and handled small objects for 8 hours each

---

[61]See id.

[62]See Tr. 285.

[63]See Tr. 154-58.

[64]See Tr. 171.

[65]See Tr. 182.

[66]See Tr. 190.

[67]See id.

[68]Tr. 191.

day and was not a supervisor or lead worker.[69] As a trust operations specialist, Plaintiff "processed daily ACHs [and] incoming [and] outgoing wire transfers, processed all cash entries in SEI trust system, verified fund availability for money m[ar]k[e]t funds, pend daily trades in trust system, processed note/liability payments."[70] Additionally, Plaintiff indicated that he wrote, typed, and handled small objects for 8 hours each day and was not a lead worker.[71]

On August 14, 2014, Plaintiff completed a Function Report. Plaintiff stated that anxiety limited his ability to work and noted that anxiety made it hard for him to finish projects.[72] He stated that he had anxiety attacks that kept him awake at night.[73] Plaintiff also noted that he used a chalkboard to write himself reminders to take his medicine; however, he answered that he did not need any special reminders to take care of other personal needs or grooming.[74] Plaintiff recorded that he was able to pay bills, count change, and handle a savings account but noted that he sometimes had difficulty counting and calculating change.[75] Additionally, Plaintiff stated that his conditions affected his concentration, ability to complete tasks, memory, ability to follow instructions, and understanding.[76] However, Plaintiff indicated that his conditions did not limit his ability to sit.[77] Plaintiff recorded that he could pay attention for about 10 minutes and that he was

---

[69]See id.

[70]See Tr. 192.

[71]See id.

[72]See Tr. 196.

[73]See Tr. 197.

[74]See Tr. 198.

[75]See Tr. 199-200.

[76]See Tr. 201.

[77]See id,

very poor at following written instructions and had some difficulty following spoken instructions because of the concentration required.[78]

The Social Security Administration denied Plaintiff's application at the initial and reconsideration levels.[79] Plaintiff requested a hearing before an administrative law judge (ALJ) of the Social Security Administration.[80] The ALJ granted Plaintiff's request[81] and conducted a hearing on October 19, 2015, in Houston, Texas.[82]

## C.    Hearing

Plaintiff, a vocational expert (Susan Rapant), and a medical expert (Dr. Steven Goldstein) testified at the hearing. Plaintiff was represented by an attorney, Angela Richard.

Plaintiff's theory of disability was unspecified polyarthropathies in his hands and depression.[83] At the hearing, Plaintiff testified that he was let go from his last job because he was not following instructions properly.[84] Plaintiff explained that he was unable to remember the steps in certain procedures even though he had performed them for nine years.[85] He stated, "All of a sudden it just didn't stick with me. It's -- I'm very forgetful, lack of memory I would say."[86] Plaintiff also referenced a fog in his brain that prevented him from concentrating – "It's like tunnel

---

[78]See id.

[79]See Tr. 72; 78.

[80]See Tr. 81.

[81]See Tr. 114.

[82]See Tr. 10-33.

[83]See Tr. 16.

[84]See Tr. 19.

[85]See id.

[86]Id.

vision to me. I mean no matter how much I try to concentrate it just don't happen."[87] Plaintiff stated that the pain in his hands while working was not as severe as the pain at the time of the hearing, reiterating the reason he lost his job was his lack of concentration.[88] When asked by the ALJ whether he could still do his past work if his mental state was better, Plaintiff answered that he could.[89]

Relating to Plaintiff's depression and medication, Plaintiff stated that his most recent medication, Lexapro, was helping a little.[90] He noted that Paxil, which he had been taking since 2002, stopped working for him, and he felt a "little bit uncomfortable with it."[91] Consequently, Dr. Panja prescribed the new medication, and Plaintiff stated that "it does good like the Paxil how it was before."[92] However, Plaintiff noted that his "brain fog is still the same."[93]

The medical expert, Dr. Stephen Goldstein, testified at the hearing.[94] Using medical evidence provided by other doctors, Dr. Goldstein diagnosed Plaintiff with osteoarthritis in his hand, Dupuytren's contractions, and diabetes.[95] He stated that he thought Plaintiff would be limited in the use of his hands for fine activities, such as typing.[96]

---

[87]Tr. 23.

[88]See Tr. 24.

[89]See Tr. 21.

[90]See Tr. 24.

[91]Id.

[92]Id.

[93]Id.

[94]See id.

[95]See Tr. 25-26.

[96]See Tr. 27.

The vocational expert, Susan Rapant, also testified at the hearing.[97]   She testified that Plaintiff previously worked as an employee benefits specialist, which is DOT 166.167-018, and as a trust operations specialist, which is DOT 169.167-014.[98] The ALJ then asked the vocational expert a hypothetical question about Plaintiff's ability to perform previous jobs given certain limitations, including "occasional fingering."[99] She responded that the employee benefits specialist position was the only job that would fit the fingering requirement because the trust operations position required "frequent fingering."[100] Furthermore, the vocational expert stated Plaintiff would be able to perform the position both as "actually" and "customarily" performed.[101]   The vocational expert later confirmed that the only job in the national economy Plaintiff was capable of performing given the limitations previously stated by the ALJ was the employee benefits specialist position.[102] Plaintiff's counsel did not challenge the expert's characterization of Plaintiff's previous job or the testimony about Plaintiff's ability to perform past relevant work.[103]

## D.    Commissioner's Decision

On November 6, 2015, the ALJ issued an unfavorable decision.[104]   The ALJ found that Plaintiff met insured status requirements through December 31, 2018, and that Plaintiff had not engaged in substantial gainful activity since October 1, 2013, the alleged onset date.[105]

---

[97]See Tr. 28.

[98]See Tr. 29.

[99]See id.

[100]See Tr. 29-30.

[101]See Tr. 30.

[102]See id.

[103]See Tr. 30-31.

[104]See Tr. 52-64.

[105]See Tr. 57.

The ALJ recognized the following impairments as severe: "osteoarthritis of the bilateral hands, Dupuytren's contractions, and diabetes mellitus."[106] The ALJ found that Plaintiff's severe impairments, individually or collectively, did not meet or medically equal the severity of one of the listed impairments in the regulations.[107]

After making these findings, the ALJ assessed Plaintiff's residual functional capacity (RFC) to do work-related activities. The ALJ considered all symptoms to the extent the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.[108] The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently.[109] The ALJ found that Plaintiff could stand or walk six hours in an eight-hour workday but for no more than one hour at a time, sit without any limitation, occasionally finger, and frequently handle.[110] In reaching this conclusion, the ALJ provided a detailed summary of the relevant medical evidence regarding Plaintiff's impairments, and an explanation of his assessment of the medical evidence and the credibility of Plaintiff's subjective complaints.[111] The ALJ found that Plaintiff's allegations were not supported by the medical evidence and, thus, the ALJ granted "little probative weight" to Plaintiff's testimony.[112]

---

[106]Id.

[107]20 C.F.R. Pt. 404, Subpt. P, App. 1; see Tr. 59.

[108]See Tr. 59

[109]See id.

[110]See id.

[111]See Tr. 59-63.

[112]Tr. 63.

Having determined Plaintiff's RFC, the ALJ then addressed whether Plaintiff was capable of performing his past relevant work as an employee benefits specialist or trust operations specialist.[113] The ALJ relied on the vocational expert's testimony about the demands of Plaintiff's past relevant work. The ALJ compared those demands with Plaintiff's RFC and found that Plaintiff was capable of performing the employee benefits specialist position as it was actually and generally performed.[114] Because Plaintiff was capable of performing the employee benefits specialist position, the ALJ found that Plaintiff had not been under a disability from October 1, 2013, through the date of the decision.[115]

Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request on March 10, 2016, thereby transforming the ALJ's decision into the final decision of the Commissioner.[116] After receiving the Appeal Council's denial, Plaintiff filed the instant action.[117]

## II. Standard of Review

### A. Summary Judgment

Summary judgment is proper if the movant establishes that there is no genuine dispute about any material fact and is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a). A factual dispute is "genuine" when a "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The substantive law will identify which facts are "material" because "[o]nly disputes over facts that might affect the outcome of the

---

[113]See Tr. 63-64.

[114]See id.

[115]See id.

[116]See Tr. 1-3.

[117]See Docket Entry No. 1, Pl.'s Comp.

suit under the governing law will properly preclude the entry of summary judgment." Id. Although the court considers the evidence and all reasonable inferences to be drawn in the light most favorable to the nonmovant, "the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." McAllister v. Resolution Trust Corp., 201 F.3d 570, 574-75 (5th Cir. 2000).

## B.   Administrative Determination

The court's review of a final decision by the Commissioner denying disability benefits is "limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." Copeland v. Colvin, 771 F.3d 920, 923 (5th Cir. 2014) (quoting Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla and less than a preponderance." Id. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perez, 415 F.3d at 461 (quoting Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." Id. "Conflicts of evidence are for the Commissioner, not the courts, to resolve." Id. (quoting Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002)).

## C.   Standard for Entitlement to Social Security Benefits

The plaintiff has the burden of proving a medically determinable physical or mental impairment lasting at least twelve months that prevents the plaintiff from engaging in substantial gainful activity. See 42 U.S.C. § 423(d)(1)(A); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial gainful activity is defined as work activity involving significant physical or mental

abilities for pay or profit." Newton, 209 F.3d at 452; see also 20 C.F.R. § 404.1572(a) and (b) (2017).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. 20 C.F.R. § 416.920 (2017). The plaintiff bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step. Newton, 209 F.3d at 453; see also 20 C.F.R. § 404.1520(e) (2017). First, the plaintiff must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b) (2017). Second, the plaintiff must prove that his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities…" 20 C.F.R. § 416.920(c) (2017). At Step Three, the ALJ must find the plaintiff disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed in appendix 1. 20 C.F.R. § 416.920(d) (2017). Fourth, the plaintiff bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work. 20 C.F.R. § 416.920(f) (2017). If the plaintiff is successful at all four of these steps, the burden shifts to the Commissioner to prove, considering the plaintiff's residual functional capacity, age, education, and past work experience, that he is capable of performing other work. 20 C.F.R. § 416.920(g)(1) (2017). If the Commissioner proves other work exists that the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work. Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

### III. Analysis

Plaintiff alleges that the ALJ's RFC findings are not supported by substantial evidence and that the ALJ's Step Four denial is not supported by substantial evidence. Defendant argues that the ALJ's decision applied the correct legal standards and is supported by substantial evidence.

## A.    Plaintiff's Residual Functional Capacity

The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently.[118] The ALJ also found that Plaintiff could stand or walk six hours in an eight-hour workday but for no more than one hour at a time, sit without any limitation, occasionally finger, and frequently handle.[119] Plaintiff argues that the ALJ's RFC findings are not supported by substantial evidence because the ALJ erred by not considering the effect of Plaintiff's non-severe mental impairments in the RFC finding. Defendant argues that the ALJ considered the objective medical evidence -- pointing out references made by the ALJ to doctor assessments -- and evaluated Plaintiff's functioning. The court concludes that substantial evidence supports the ALJ's RFC determination because the ALJ properly considered the effect of Plaintiff's non-severe mental impairments.

Residual functional capacity is the most a claimant is capable of doing in a work setting given the claimant's physical and mental limitations that are caused by impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1) (2017). All of the claimant's medically determinable impairments, including medically determinable impairments that are not "severe," are considered when assessing the claimant's RFC. 20 C.F.R. § 404.1545(a)(2) (2017). A plaintiff's symptoms diminish his capacity for basic work activities only "to the extent that [the] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4) (2017).

---

[118]See Tr. 59.

[119]See id.

Contrary to Plaintiff's argument the ALJ acknowledged and considered Plaintiff's testimony about his mental limitations, such as depression and anxiety, as well as objective medical evidence from three treating doctors. The ALJ considered Plaintiff's testimony that he experienced depression and was terminated in 2013 due to difficulty following instructions.[120] The ALJ also considered Plaintiff's statements about his forgetfulness and lack of memory.[121] The ALJ found that these statements were "not entirely credible" because they were not supported by the laboratory findings or the medical record as a whole.[122] The ALJ noted Plaintiff's testimony that he had received mental health treatment via his primary care physician and that the medications prescribed to him alleviated his depressive symptoms.[123] The ALJ also noted that the examinations of Plaintiff have consistently shown no evidence of a functional loss and that Plaintiff has remained alert and oriented, with an intact ability to concentrate.[124] Consequently, the ALJ found that Plaintiff's allegations were not corroborated in the overall record and, thus, "considered but granted little probative weight to [Plaintiff's] testimony."[125]

The ALJ referred to the psychological examination performed by Dr. Barbara Hall on October 9, 2014.[126] The ALJ noted that Plaintiff's thinking was coherent and his intelligence was in the above-average range.[127] Additionally, the ALJ noted that Plaintiff's memory, insight, and

---

[120]See Tr. 60.

[121]See id.

[122]See Tr. 60-63.

[123]See id.

[124]See id.

[125]Id.

[126]See Tr. 61.

[127]See id.

judgment were all intact.[128] Dr. Hall diagnosed Plaintiff with depressive disorder,[129] which the ALJ gave great weight because it was consistent with medical evidence that showed Plaintiff's primary care physician had treated him for depression and anxiety without evidence of functional loss.[130]

The ALJ referred to the examination performed by Dr. Alan Rosen on January 12, 2015, which noted that Plaintiff had a normal mood, attention span, and concentration.[131] The ALJ also referenced the June 2015 examination by Dr. Panja, which showed no objective evidence of depression or anxiety.[132] Although the ALJ did not reference them, other examinations performed by Dr. Panja from January 5, 2012, to August 22, 2014, stated that Plaintiff never exhibited evidence of depression or anxiety.[133]

Plaintiff also argues that the RFC assessment was in error because the ALJ found at Step Two that Plaintiff's non-severe mental limitations contributed to "mild restrictions." However, the RFC assessment is separate and distinct from the severity inquiry at Step Two. See Gutierrez v. Barnhart, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) (per curiam) (unpublished) ("A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe disability. Rather, the disability must make it so that the claimant cannot work to entitle the claimant to disability benefits."); Suttles v. Colvin, 543 F. App'x 824, 826 (10th Cir. 2013) (holding that "mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps"). The ALJ stated in the Step Two analysis that the mild limitations

_____

[128]See id.

[129]See Tr. 249.

[130]See Tr. 61.

[131]See Tr. 61-62; 260.

[132]See Tr. 62; 314.

[133]See Tr. 346-58.

"are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment..."[134] Thus, the RFC finding does not necessarily need to coincide with the Step Two finding as long as the underlying mental impairment is considered.

Given the ALJ's extensive discussion of Plaintiff's testimony -- which was found not credible because it was unsupported by the objective medical evidence -- and the medical record regarding Plaintiff's mental impairments, the court concludes that the ALJ properly considered the effect of Plaintiff's non-severe mental impairments in the RFC analysis. The ALJ also made an appropriate RFC assessment that was distinct from the Step Two analysis while still considering the underlying mental impairment. Under the appropriate standard of review the court finds that medical evidence constitutes substantial evidence supporting the ALJ's RFC finding that Plaintiff does not suffer from a limitation resulting from his mental impairments.

## B. Substantial Evidence Supports the ALJ's Step Four Denial

After comparing Plaintiff's RFC with the mental and physical demands of his past relevant work, the ALJ held that Plaintiff is able to perform the employee benefits specialist position as it was both actually and generally performed. This court concludes that substantial evidence supports the ALJ's decision.

At Step Four the RFC must be compared to the demands of the plaintiff's past relevant work to determine whether the plaintiff is capable of performing that work. 20 C.F.R. § 404.1560(b) (2017). Past relevant work is defined as work that the claimant has done in the past 15 years, that

---

[134]Tr. 59.

was substantial gainful activity, and that lasted long enough for you to learn to do it. 20 C.F.R. § 404.1560(b) (2017). If the plaintiff can perform past relevant work, either "as-actually-performed" or "as-generally-performed," a denial of benefits at Step Four is appropriate. 20 C.F.R. § 404.1560(b)(2)-(3) (2017).

### 1.    Past Relevant Work As-Actually-Performed

Plaintiff argues that he is not able to perform past relevant work as-actually-performed because the requirements of his past job exceed his occasional fingering limitation. See SSR 96-9p, 1996 WL 374185, at *3 ("occasional" is defined as "occurring from very little up to 1/3 of the time"). Plaintiff contends that the only information regarding his past job as an employee benefits specialist was the Work History Report, which showed that the job required more than occasional fingering. Plaintiff also argues that the vocational expert never testified that Plaintiff could return to his job as-actually-performed. Defendant argues that the Work History Report fails to specify how many hours Plaintiff spent performing fingering activities as compared to handling small objects. Defendant argues that the vocational expert's unchallenged testimony establishes that Plaintiff could perform his past relevant work as-actually-performed.

In determining whether the claimant can perform past relevant work, the claimant's RFC is compared with the physical and mental demands of his previous work. 20 C.F.R. § 404.1560(b) (2017). Information about the claimant's previous work may be obtained through the claimant, a vocational expert, or a vocational resource. Id. While an ALJ has a duty to make a sufficient inquiry into a claim, it is an applicant's burden to prove an inability to perform former work. Villa v. Sullivan, 895 F.2d 1019, 1023 (5th Cir. 1990) (citations omitted). This burden extends to the exertional requirements of the claimant's past relevant work. Id.

The Work History Report indicated that Plaintiff performed 8 hours of writing, typing, or handling small objects each 8-hour workday as an employee benefits specialist.[135] Writing, typing, or handling small objects can consist of two different types of non-exertional activities: fingering and handling. Because the report does not distinguish how many hours Plaintiff spent doing each activity, the Work History Report does not prove that Plaintiff's past job required more than occasional fingering. Plaintiff did not provide other evidence or testimony regarding his previous job's fingering requirement. Thus, the evidence in the record does not show that the requirements of Plaintiff's past job exceed his limitation of only occasional fingering.

Plaintiff also argues that the vocational expert never testified that Plaintiff could perform his previous job as-actually-performed. A vocational expert may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work as-actually-performed. 20 C.F.R. § 404.1560(b)(2) (2017). A vocational expert may also offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work as-actually-performed. Id.

The ALJ presented the vocational expert with hypothetical questions about whether a person with the physical limitations imposed by Plaintiff's medical impairments can meet the demands of the employee benefits specialist position, and the vocational expert answered that a person with Plaintiff's impairments could perform that position as-actually-performed.[136] This testimony was not challenged by Plaintiff's counsel.

Given the absence of record evidence that Plaintiff's actual job duties required more than occasional fingering and the vocational expert's unchallenged testimony that Plaintiff could perform

---

[135] See Tr. 191.

[136] See Tr. 29-30.

his past relevant work as-actually-performed, the court concludes that substantial evidence supports the ALJ's finding that Plaintiff could perform the employee benefits specialist position as-actually-performed.

## 2. Past Relevant Work As-Generally-Performed

Plaintiff argues that the vocational expert erroneously identified Plaintiff's past job in the Dictionary of Occupational Titles (DOT), which the ALJ relied on to find that Plaintiff is capable of performing past relevant work as-generally-performed. Plaintiff contends that the job identified by the vocational expert, DOT Code 166.167-018, is that of a manager and does not describe Plaintiff's previous job. Plaintiff provides two alternative DOT Codes, which he contends more closely match the duties he described, and requests the case be remanded for further vocational testimony. Defendant argues that Plaintiff had an opportunity to question the vocational expert at the hearing, but he chose only to ask a question about the effect of a mental impairment on his ability to perform the job. Accordingly, Defendant argues that when a Plaintiff offers no evidence contrary to the vocational expert's testimony, he fails to show that he cannot perform the job cited by the vocational expert.

In determining whether the claimant can perform past relevant work, information about the claimant's previous work may be obtained through the claimant, a vocational expert, or a vocational resource, such as the "Dictionary of Occupational Titles" published by the Department of Labor. 20 C.F.R. § 404.1560(b)(2) (2017). A vocational expert may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work as-generally-performed. Id. A vocational expert is valuable because "he is familiar with the

specific requirements of a particular occupation, including working conditions and the attributes and skills needed." Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986).

The vocational expert reviewed Plaintiff's vocational evidence and identified the employee benefits specialist position as DOT 166.167-018.[137] The vocational expert described the physical demands from that job; and, in response to the ALJ's hypothetical questions, the vocational expert testified that a person with Plaintiff's impairments could perform the employee benefits specialist position as-generally-performed.[138] If Plaintiff, who was represented by counsel at the hearing, believed there was a discrepancy between his prior work and the DOT Code identified by the vocational expert, the inconsistency should have been addressed during cross-examination of the vocational expert. See Bryant v. Astrue, Civil Action No. 09-1499, 2010 WL 3541097, at *5 (W.D. La. July 30, 2010) (unpublished) ("[I]f plaintiff harbored any doubts concerning the [vocational expert]'s characterization of his prior work, plaintiff was obliged to emphasize the alleged inconsistency and to press the issue upon cross-examination"). However, counsel failed to raise the issue or challenge the vocational expert's characterization of Plaintiff's past work.[139] While an ALJ has a duty to make a sufficient inquiry into a claim, it is an applicant's burden to prove an inability to perform former work. Villa, 895 F.2d at 1023 (citations omitted). Moreover, whether a more accurate DOT Code exists for Plaintiff's previous job is not a determination for this court to make.

This court's review is limited to whether the ALJ's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. Copeland, 771 F.3d at 923 (quoting Perez, 415 F.3d at 461). The ALJ may properly rely on the vocational expert's testimony if the hypothetical question presented to the vocational expert

[137]See Tr. 28-29.

[138]See Tr. 29-30.

[139]See Tr. 30-31.

incorporates reasonably all disabilities recognized by the ALJ and the claimant is afforded the opportunity to correct deficiencies in the ALJ's question. Boyd v. Apfel, 239 F.3d 698, 706-707 (5th Cir. 2001); Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). The hypothetical question must take "into account all the restrictions reasonably warranted by the evidence." Dominque v. Barnhart, 388 F.3d 462, 463 (5th Cir. 2004). If the hypothetical question meets the criteria, then the ALJ may justifiably rely on the vocational expert's testimony in deciding job availability for a person with the plaintiff's limitations. Masterson v. Barnhart, 309 F.3d 267, 273-74 (5th Cir. 2002). Given the absence of record evidence proving Plaintiff's inability to perform previous work and the vocational expert's unchallenged testimony that a person with Plaintiff's impairments could perform the employee benefits specialist position as-generally-performed, the court concludes that substantial evidence supports the ALJ's finding that Plaintiff could perform the employee benefits specialist position as-generally-performed.

## IV. Conclusions and Order

In sum, the record provides substantial evidence supporting the Commissioner's decision that Plaintiff is not disabled. Therefore, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Docket Entry No. 10) is **DENIED**. It is further **ORDERED** that Defendant's Cross-Motion for Summary Judgment (Docket Entry No. 12) is **GRANTED**. It is further **ORDERED** that the Commissioner's decision is **AFFIRMED**.

**SIGNED** at Houston, Texas, on this the 28th day of June, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE